---

(37 Misc. Rep. 569.)

In re COPELAND'S ESTATE.

(Surrogate's Court, Cortland County. March, 1902.)

BENEFIT CERTIFICATE—APPLICATION OF PROCEEDS.
     In an action by an administrator against a fraternal benefit associa-
tion, it was determined that the decedent had in her lifetime, and after
the death of her husband, directed her benefit certificate to be paid to
her estate. Her will directed that her debts should be paid out of the
proceeds thereof. She died insolvent, and without any descendants or
any person dependent upon her for support. *Held*, that the fund should
be applied by her administrator to her debts, though a law of the order
provided that in the event of the death of a beneficiary designated by a
member, if no other disposition is made, the benefit shall be paid to the
heirs of the decedent, and, if no person is entitled to the fund, it shall
revert to the beneficiary fund.

In the matter of the estate of Martha Copeland, deceased. Decree
directing distribution entered.

John H. Miller, for administrators.

William J. Mantanye and George E. Goodrich, for certain cred-
itors.

Albert G. Thorne, for Anna C. De Groat and others, heirs and next
of kin of Martha Copeland, deceased.

EGGLESTON, S. In an action formerly brought in the supreme
court of the state of New York, in which action William Esmay and
Mary Esmay, as administrators with the will annexed of Martha
Copeland, deceased, were plaintiffs, and the Supreme Council of Royal
Templars of Temperance and others were defendants, the issues hav-
ing been duly tried at a special term of the supreme court, held in
the county of Cortland, the findings of fact and conclusions of law
have been determined by that court, which findings of fact and con-
clusions of law are conceded to be the findings of fact and conclu-
sions of law applicable upon this hearing. There is left for deter-
mination at this time the one question as to the disposition of the
fund derived upon a certificate of membership issued by the Supreme
Council of Royal Templars of Temperance to Martha Copeland;
the court in that action having rendered a judgment in favor of the
administrators and against the defendant insurance company for the
amount of money payable under the certificate, together with costs.
Upon the one side it is claimed that this money belongs to the admin-
istrators of the estate of the deceased, and should be used in the pay-
ment of her debts. Upon the other side it is claimed that the money
belongs to the heirs and next of kin of the deceased, and that the
creditors are not entitled to said fund, or any part of the same.

The Supreme Council of Royal Templars of Temperance is a domestic corporation, duly incorporated under the laws of this state, and is a fraternal mutual benefit insurance association or company, having its principal place of business at Buffalo, N. Y., having as one of its objects the aiding and assisting its members and their families in cases of want, sickness, or death; and for that purpose it was authorized to establish local or select councils in different localities, make by-laws, rules, and regulations necessary to provide for the collection of the beneficiary fund, out of which not to exceed $5,000 on the death of any one person could be paid, under the rules and regulations made, and to fix the amounts of assessments, fees, and dues, and to collect the same for the payment of its expenses, support, and benefits.    This corporation duly adopted a constitution, by-laws, rules and regulations, and by section 11 of the beneficiary by-laws of the corporation it was provided:

"That in the event of the death of all the beneficiaries designated by the member before the decease of such member, if he shall make no other disposition thereof, the benefit shall be paid to the heirs of the deceased member; and, if no person or persons shall be entitled to receive such benefit by the laws of this order, it shall revert to the beneficiary fund."

By section 24 of the beneficiary by-laws of the corporation it was provided:

"That a member may at any time, when in good standing, surrender his benefit certificate, and a new certificate shall thereafter be issued, payable to such beneficiary or beneficiaries as he may direct, upon the payment of a certificate fee of twenty-five cents. Such a surrender and direction must be in writing, upon a blank provided for that purpose, signed by the member, and forwarded, under the seal of the select council, with the benefit certificate, to the supreme secretary."

On the 31st day of October, 1882, this corporation duly made, issued, and delivered to Martha Copeland, the testatrix, pursuant to law and its constitution and by-laws, its certificate known as "Ladies' Mutual Aid Certificate, Number 9,048, Class E," whereby she was declared a beneficiary member of the corporation, and entitled to all the rights and privileges guarantied to contributing life members by the constitution and by-laws, upon the consideration that she conform to the same and the rules and regulations of the order, and that, in case of her death while in good standing, the beneficiary named by her should be entitled to the amount of the assessment of all members of the same class, of 50 cents each, not to exceed in all $1,000. By the issue of this certificate the testatrix became a member of the order, and in that certificate was named and designated as the beneficiary her husband, George W. Copeland.    At this time she resided with her husband in the town of Marathon, Cortland county, in which town was a local council established in accordance with the constitution and by-laws of the corporation.    Prior to the death of Mrs. Copeland, and on the 27th day of May, 1895, her husband, the beneficiary named in the certificate, died at Marathon, N. Y.    On the 28th day of May, 1898, the testatrix duly executed in writing, upon a blank provided for that purpose by the corporation, a surrender of the certificate, and directed the same to be paid to her estate, and delivered the certificate, with the surrender and direction written thereon, to

William Dellow, who was at that time the secretary of the local or select council known as "Rescue Council Number 50, New York," to be forwarded by him to the supreme secretary of the corporation, in accordance with its rules and by-laws; and Mr. Dellow on the same day did, in accordance with the rules and by-laws of the corporation, forward the same to E. B. Rew, the supreme secretary of the corporation, who duly received the same, and acknowledged the receipt of it by letter. A few days thereafter the supreme secretary of the corporation acknowledged the receipt of the letter, stating, however, that the order was not allowed, under insurance laws of several states, to write certificates in that way, and that it was necessary that they have the full Christian name of each one of the beneficiaries, in order that drafts might be drawn direct in the event of death, and inclosed another blank form to have filled out, giving the full Christian names of those to whom Mrs. Copeland desired to have the amount made payable. On the following day, and before Mr. Dellow received the answering letter from the supreme secretary, Mrs. Copeland died, being at that time, and having been ever since the issuing of the certificate to her, a member of the order in good standing, having faithfully maintained all pledges and agreements on her part, and in all things complied with the rules, laws, and regulations of the order, and paid all assessments, dues, and moneys required of her by the corporation, and by its rules and by-laws, up to the time of her death. By the judgment of the supreme court it has been found that this money should be paid by the order to the administrators of the estate, and no exception has been taken to the facts as found, nor to the conclusions of law.

One fact that should be noted here is that at the time of her death Mrs. Copeland lived alone. Her husband had died several years previous to her death, and there were no descendants, and no persons dependent upon her for maintenance or support. She had one sister residing in the county, and other persons more distantly related to her residing some distance from her home; but it does not appear that any of these persons were in any way dependent upon her for their support, or that there were any intimate family relations existing between them. Surely they were not in any way objects of her bounty. Formerly the husband had been the beneficiary named by her in the certificate, but after his death, believing that no one would have a greater claim upon her estate than her creditors, she sought to provide for the payment of her debts. At the time of her death she was insolvent, and, even with this fund, it is conceded that there are not sufficient assets with which to pay her indebtedness. Some considerable portion of this indebtedness was created in order that she might herself be comfortable during her lifetime, for services of some who had been kind to her and assisted her in different ways, so that equitably this money should be used to pay the indebtedness due from her estate, unless some stern or inflexible rule of law is interposed preventing the use of this fund in this way. It is very clear that Mrs. Copeland fully understood the situation, and appreciated the same, as she was endeavoring just prior to her death to have it arranged so that this

money should go to pay those persons to whom she was justly indebted, and who had some claims upon her for services performed, and for the things furnished to make her comfortable during her lifetime. Really, in comparing the rights of the creditors, upon the one hand, and the heirs, upon the other, the rights of the heirs to the fund in question sink into insignificance, while the rights of the creditors are equitably asserted.

In January the testatrix made her last will and testament, and, as the will was made subsequent to the death of her husband, she provided in her will as follows:

"At my death there will be one thousand dollars life insurance from the Royal Templars. Out of this I want all my debts, of whatever nature, paid. There are notes against me that must be paid. I do not want any one to lose anything by me."

Thus it will be seen that Mrs. Copeland had an express intention, after the death of her husband, of having this fund used for the payment of any debts which might be owing by her upon her decease; and the court has found, as a conclusion of law, that by surrendering the benefit certificate, and directing to whom the new certificate should be paid in the manner and form required by the by-laws of the corporation, and by forwarding the same, with the benefit certificate, to the supreme secretary, she did all that was required of her to make a valid change of beneficiary, and the fact that the corporation did not then perform the duty which devolved upon it, to issue a new certificate, was no bar to a recovery in the action by the administrators against the order for the money due under the membership certificate. By reference to section 3 of the act incorporating the insurance company (Laws 1880, c. 586), it is stated that the benefit to be derived under the certificate of insurance is to aid the member and her family. Its first purpose is to aid a member. By section 10 of the beneficiary law of the order it is provided:

"In the event of death of one or more of the beneficiaries designated by the member before the decease of such member, if he shall give no further direction for the disposal of the benefit, at his death it shall be paid in full to the husband, wife, and children of such deceased beneficiary or beneficiaries pro rata. In case such deceased beneficiary or beneficiaries should leave no husband, wife, or children, such benefit shall be paid in full to the surviving beneficiary or beneficiaries, each sharing pro rata as provided in the benefit certificate."

By section 11 it is provided:

"In the event of the death of all the beneficiaries designated by the member before the decease of such member, if he shall make no other disposition thereof, the benefit shall be paid to the heirs of the deceased member; and, if no person or persons shall be entitled to receive such benefit, it shall revert to the beneficiary fund."

The husband, the first-named beneficiary, was dead. He had been designated by the member as the beneficiary. Before the decease of the member, she did make another disposition of the fund. She did it in her will. She did it by signing the blank, and forwarding it through the local council to the supreme secretary of the order. The court has found, as matter of law, that by the act of the de-

fendant she did all that was required of her to make a valid change of the beneficiary. She made the persons to whom she was indebted the beneficiaries, and the order could not arbitrarily, under the circumstances, insist that, because of the fact that she did not state the names of those persons, the fund could not be paid to them, through the legal representatives of her estate. If this were so, it would not be an insurance 'in aid of the member, and would be repugnant to section 3 of the act of incorporation. While it is undoubtedly true, as is urged by the counsel for the heirs, that this fund is exempt from the payment of debts, from seizure under execution, or other legal process for the benefit of creditors, yet where the member herself has provided for its being used to pay her debts, and asks to have it applied in that way, it is not so exempt, as it would not be in aid of the member asking for such disposition. Under the facts as found by the learned justice in the supreme court, I am clearly of the opinion that this fund should be used by the administrators toward the payment of the debts of the deceased. Any other disposition of the fund would be in direct conflict with her expressed direction. It would be an injustice to the dead and an injustice to the living. A decree may be entered directing the distribution of this fund by the administrators toward the payment of the debts due from the estate, with costs against contestants.

Decreed accordingly.